

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-11-2005

# Lacava v. Kyler

Precedential or Non-Precedential: Precedential

Docket No. 03-1398

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Lacava v. Kyler" (2005). *2005 Decisions.* Paper 1509.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1509

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 03-1398
_____

MICHAEL LACAVA,

*Appellant*

v.

KENNETH D. KYLER;
THE DISTRICT ATTORNEY FOR
PHILADELPHIA COUNTY;
THE ATTORNEY GENERAL OF THE STATE
OF PENNSYLVANIA

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 01-cv-06829)
District Judge: Honorable Berle M. Schiller

_____

Argued
November 18, 2004

Before: ROTH, SMITH AND BECKER, *Circuit Judges*

(Filed February 11, 2005)

Joseph Leibowicz, Esquire (Argued)
James S. Malloy
Kirkpatrick & Lockhart LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222

   *Attorneys for Appellant*

Lynne Abraham
District Attorney of Philadelphia
Arnold H. Gordon
First Assistant District Attorney
Ronald Eisenberg
Deputy District Attorney, Law Division
Thomas W. Dolgenos
Chief, Federal Litigation
David C. Glebe, Esquire (argued)
Assistant District Attorney
1421 Arch Street
Philadelphia, PA 19102

   *Attorneys for Appellee*

_____

OPINION OF THE COURT
_____

BECKER, *Circuit Judge*.

  Michael LaCava appeals from an order of the District

2

Court which denied his petition for writ of habeas corpus as untimely filed, rejecting his contention that equitable tolling should apply. The appeal requires us to decide whether the twenty-one month period that LaCava allowed to pass prior to making inquiry into the status of his state petition for allowance of appeal precludes a finding of due diligence and thus application of the principle of equitable tolling, or whether the matter should, as LaCava contends, be remanded to the District Court for an evidentiary hearing. We hold that, under the circumstances of this case, the twenty-one month period of passivity precludes a finding of due diligence for purposes of equitable tolling, and thus the necessity of an evidentiary hearing. We will therefore affirm the order of the District Court denying the petition as untimely.

## I. FACTS AND PROCEDURAL HISTORY

LaCava was found guilty by a jury in the Philadelphia County Court of Common Pleas of first degree murder, aggravated assault, simple assault, possession of an instrument of crime, and criminal conspiracy. The jury set the penalty at death. On direct appeal, the Pennsylvania Supreme Court affirmed LaCava's convictions, but vacated the death sentence and remanded the matter for a new sentencing hearing. *Commonwealth v. LaCava*, 666 A.2d 221 (Pa. 1995). LaCava was subsequently sentenced to life imprisonment on March 22, 1996, a sentence he did not appeal.

In January 1997 LaCava filed a *pro se* petition for collateral relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541-9545 (West

3

1998). Counsel was appointed and an amended post-conviction petition was filed. The PCRA court denied LaCava's petition on January 27, 1999, and the Pennsylvania Superior Court affirmed that decision in January of the following year. LaCava, still represented by counsel, filed a request for permission to appeal, but the Pennsylvania Supreme Court rejected the petition in an order dated August 22, 2000.

On December 12, 2001, LaCava filed a *pro se* petition for habeas corpus, presenting four claims that appellate counsel rendered ineffective assistance. As the merits of those claims are not at issue here, we will not set forth the specifics. The Commonwealth answered by asserting that LaCava's habeas petition was time-barred and must be dismissed. The Magistrate Judge to whom LaCava's petition was referred issued a Report recommending that his habeas petition be denied as untimely under 28 U.S.C. § 2244(d).[1]

---

[1]Section 2244(d)(1) provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

4

The Magistrate Judge concluded that LaCava's conviction became final on April 21, 1996, at the expiration of his time for seeking review with the Pennsylvania Supreme Court. *See* Pa. R. App. P. 1113(a) (petition for allowance of appeal shall be filed within thirty days from the entry of the order of the Superior Court sought to be reviewed); *see also* 28 U.S.C. § 2244(d)(1)(A); *Swartz v. Meyers*, 204 F.3d 417, 424 (3d Cir. 2000) ("[T]he period of limitation tolls during the time a prisoner has to seek review of the Pennsylvania Superior

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1) (West Supp. 2004).

5

Court's decision[,] whether or not review is actually sought."). This was three days before the Antiterrorism and Effective Death Penalty Act ("AEDPA") went into effect, and hence, pursuant to *Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998), LaCava had until April 23, 1997 to file his habeas petition.

Section 2244(d)(2) provides, however, that: "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. . . ." 28 U.S.C. § 2244(d)(2). Accordingly, the statute was tolled when LaCava properly filed his state post-conviction petition on January 14, 1997, and remained tolled until August 22, 2000 when the Pennsylvania Supreme Court denied his petition for allowance of appeal. *See Stokes v. Dist. Attorney of County of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001) (time during which state prisoner may file certiorari petition in the United States Supreme Court from denial of state post-conviction petition does not toll statute of limitations). The Magistrate Judge calculated, correctly we believe, that LaCava had approximately three and one-half months, or until December 2000, to file a timely habeas petition. LaCava's petition, which was submitted to prison officials on December 12, 2001, was filed well beyond the permissible period. The Magistrate Judge also concluded that LaCava had failed to satisfy any of the exceptions to the limitation period as set forth in 28 U.S.C. § 2244(d)(1)(B)-(D).

There ensued a series of filings in which LaCava asserted that the untimely filing could not be attributed to him because notice of the order denying his petition for allowance of appeal

6

was delayed and he acted diligently in pursuing federal habeas corpus relief once he did receive notice. We detail these filings in the margin.[2]    Attached to LaCava's filings were three documents: (1) a copy of a letter from LaCava to the Pennsylvania Supreme Court's Deputy Prothonotary dated April 17, 2002, inquiring as to whether notice of the denial of allocatur had been mailed to him prior to December 5, 2001; (2) a copy of a letter from the Prothonotary's Office dated December 5, 2001, advising LaCava that his petition for allowance of appeal was denied on August 22, 2000; and (3) a copy of a letter from LaCava to his court-appointed PCRA

---

[2]Prior to receipt of the Magistrate Judge's Report and Recommendation, and indeed prior to the date the Magistrate Judge's Report was even issued, LaCava moved, *inter alia*, for leave to file a traverse to the Commonwealth's response. LaCava's motion, however, was not received by the District Court and entered on the docket until July 18, 2002, two days after the Magistrate Judge issued her Report. LaCava filed objections to the Report two weeks later in which he complained that, because his motion had not been acted on before the Magistrate Judge issued her Report, he was being precluded from showing that his habeas petition was timely filed, using the principle of equitable tolling. LaCava also stated that he did not address equitable tolling in his petition because, at the time he submitted the petition, he had not yet obtained documentary evidence supporting his equitable tolling claim, and did not want to flag an issue that the Commonwealth could later be deemed to have waived. *See Robinson v. Johnson*, 313 F.3d 128 (3d Cir. 2002), *cert. denied*, 540 U.S. 826 (2003).

attorney dated April 17, 2002, requesting that counsel review his records to determine if notice of the Pennsylvania Supreme Court's August 22 order had been mailed to LaCava at any time in August of 2000.[3]

On consideration of these papers, the Magistrate Judge issued an order permitting LaCava thirty days to file a traverse. LaCava did so, essentially reasserting the arguments he set forth in his previous filings. He again claimed an entitlement to equitable tolling due to the "extraordinary circumstance" of having received delayed notice of the state court's disposition of his petition for allowance of appeal. LaCava asserted that his allegation of delayed notice – and thus the reason for his untimely filing – was supported by the exhibits he attached to

---

[3]LaCava further asserted that he is "actually and factually innocent of the crimes upon which he was convicted," and argued that this contention overcomes the bar imposed by AEDPA's statute of limitations. In his subsequent papers, LaCava pointed to trial testimony which, in his submission, undermined his first degree murder conviction, and contends that evidence of corruption within the 39th District of the Philadelphia Police Department lends support to his belief that certain police officers and Commonwealth witnesses testified falsely at trial. Since the certificate of appealability issued by the motions panel was limited to the equitable tolling argument and did not extend to LaCava's earlier alternative argument that his claim of actual innocence could serve to overcome the time-bar of § 2244(d)(1), we do not consider this alternative contention.

8

his objections, *see supra*, which, he claims, showed that he did not receive timely notice of the Pennsylvania Supreme Court's disposition from either the Prothonotary of the Pennsylvania Supreme Court or his attorney.[4]  LaCava conceded, however, that he was unable to offer direct documentary evidence in the form of prison logs or a letter from his attorney since no responses were forthcoming.

In an order entered on January 10, 2003, the District Court, after noting that it had independently considered LaCava's petition for writ of habeas corpus, the Magistrate Judge's Report and Recommendation, and LaCava's traverse, approved and adopted the Report and Recommendation, denied LaCava's habeas petition, and declined to issue him a certificate of appealability.  LaCava timely appealed.  We appointed

---

[4]Counsel states that in the course of preparing appellees' brief he contacted the Chief Clerk of the Pennsylvania Supreme Court.  During that phone conversation, the clerk reported that "although the paper files relating to LaCava's request for *allocatur* have not been retained, the Court's computer records showed that routine notice was sent to LaCava's counsel on the date that *allocatur* was denied, *viz.*, August 22, 2000."  Additionally, there was no indication in the records that the notice was returned as undeliverable and had to be resent.  *Id.*  We decline, however, appellee's invitation to take judicial notice of the representations made by the Chief Clerk of the Pennsylvania State Supreme Court since they are beyond the purview of Fed. R. Evid. 201.

counsel and granted a certificate of appealability as to the issue of "whether [LaCava] timely filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254."[5]  (Order of Court dated 12/05/03.)

The District Court had jurisdiction pursuant to 28 U.S.C. § 2254, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.  Our review of a District Court's decision dismissing a habeas petition on statute of limitations grounds is plenary.  *See Brown v. Shannon*, 322 F.3d 768, 772 (3d Cir. 2003).

## II.  DISCUSSION

This Court has held that AEDPA's statute of limitations is subject to equitable tolling.  *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 617 (3d Cir. 1998).  We have cautioned, however, that courts should be sparing in their use of this doctrine, *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999), applying equitable tolling "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice." *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998) (quotation marks and citation omitted).  Equitable tolling is appropriate when "the principles of equity would make the rigid application of a limitation period unfair," *Miller*, 145 F.3d at 618 (quotation marks and alterations

---

[5]We express our appreciation for counsel's able representation of LaCava during both briefing and oral argument.

omitted), such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition *and* the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims. *Fahy v. Horn*, 240 F.3d 239, 244-45 (3d Cir. 2001). Mere excusable neglect is not sufficient. *Miller*, 145 F.3d at 618-19; *see also Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999).

LaCava contends that he is entitled to have this matter remanded to the District Court for an evidentiary hearing on the equitable tolling issue because he did not receive notice of the Pennsylvania Supreme Court's denial of his petition for permission to appeal within the limitations period and because he exercised reasonable diligence in filing his habeas petition once he finally received such notice.

A. Extraordinary Circumstances

LaCava argues that his failure to receive notice of the Pennsylvania Supreme Court's denial of his petition for permission to appeal constitutes extraordinary circumstances which would warrant equitable tolling. We disagree.

We note that LaCava was represented by counsel during his state collateral proceedings, including the filing of his petition for allowance of appeal. Accordingly, LaCava was not entitled to personal notice of the Pennsylvania Supreme Court's order. *See* Pa. R. App. P. 1123(a). LaCava fares no better by implying that counsel was derelict in failing to timely notify him of the state court's disposition. We have stated that "[i]n non-capital cases, attorney error, miscalculation, inadequate

11

research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." *Merritt v. Blaine*, 326 F.3d 157, 169 (3d Cir. 2003) (quoting *Fahy*, 240 F.3d at 244); *see also Johnson v. Hendricks*, 314 F.3d 159, 163 (3d Cir. 2002). LaCava advances no allegations of attorney malfeasance that would elevate this case to an "extraordinary circumstance" sufficient to warrant equitable tolling. Moreover, the circumstances of this case are certainly distinguishable from that presented in *Seitzinger*, *supra*, 165 F.3d at 242, where we held that an attorney's affirmative misrepresentation to his client that he had filed a timely complaint on her behalf when in fact he had not, coupled with the plaintiff's extreme diligence in pursuing her claim, "created a situation appropriate for tolling."

We also find LaCava's reliance on *Valverde v. Stinson*, 224 F.3d 129 (2d Cir. 2000) misplaced. The petitioner in *Valverde* alleged that a corrections officer intentionally confiscated his *pro se* habeas petition and related legal papers shortly before the filing deadline, and that the officer's seizure "proximately caused" his failure to file the petition on time. The Second Circuit held that, as a matter of law, this type of intentional confiscation was an "extraordinary circumstance." *Id*. at 133. Accordingly, it remanded the matter to the District Court for further "factual development" on the issue of whether this circumstance prevented the petitioner from filing his petition in a timely manner. While a *possibility* may exist that an evidentiary hearing would uncover some wrongdoing on the part of correction officers in delivering notice of the state court's order to LaCava, there is no allegation by LaCava that he was prevented by prison staff from making an earlier inquiry of

12

either the state court or his attorney. Instead, LaCava concedes that once his petition for allowance of appeal was filed in February of 2000, he did nothing further to ensure that his claims were proceeding properly through the state appellate process until November 31, 2001.

## B. Due Diligence

Even assuming *arguendo* that we agreed with LaCava's contention that the delayed notice he experienced constitutes extraordinary circumstances, we nonetheless conclude that LaCava did not exercise the requisite due diligence by allowing more than twenty-one months to lapse from the filing of his petition for allowance of appeal until he inquired with the Pennsylvania Supreme Court's Prothonotary's Office as to its status. We thus find no reason to remand this matter for an evidentiary hearing. *See*, *e.g.*, *Robinson v. Johnson*, 313 F.3d at 143 (hearing on availability of equitable tolling not warranted where petitioner failed to show that he exercised reasonable diligence in attempting to file a timely petition).

It is a well-established principle that, in order for appellant to claim an entitlement to equitable tolling, he must show that he "exercised reasonable diligence in . . . bringing [the] claims." *Miller*, 145 F.3d at 618-619 (quoting *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1126 (3d Cir. 1997); *see also Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990). This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well. *See, e.g.*, *Jones v. Morton*, 195 F.3d at 160

(equitable tolling is not warranted where appellant "made no showing that he 'exercised reasonable diligence' in satisfying the exhaustion requirement in order to present his claims in a timely federal habeas petition"). The language of AEDPA itself indicates as much, with statutory tolling being limited to "properly filed" applications for state post-conviction or other collateral relief. *See* 28 U.S.C. § 2244(d)(2); *see also Artuz v. Bennett*, 531 U.S. 4 (2000); *Lovasz v. Vaughn*, 134 F.3d 146 (3d Cir. 1998).

Moreover, while due diligence "does not require 'the maximum feasible diligence,' . . . it does require reasonable diligence in the circumstances." *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004). LaCava knew that he had just over three months remaining on the one-year limitations period to file a timely federal habeas petition. To be certain, we are not attributing fault because LaCava waited nine months to file his PCRA petition. *See, e.g.*, *Valverde*, *supra*, 224 F.3d at 136 (habeas petitioner "is not ineligible for equitable tolling simply because he waited until late in the limitations period to file his habeas petition"). However, we believe that this is a factor to be taken into consideration when determining whether it was reasonable for him to wait twenty-one months before making an inquiry to the state court or to counsel, and we conclude that it was not.

The period at issue in the instant case is a far cry from the other cases relied on by LaCava. In *Phillips v. Donnelly*, 216 F.3d 508 (5th Cir. 2000), petitioner asserted that he did not receive the notice of denial of review for nearly four months, at which time he unsuccessfully sought leave to file an out-of-time

14

appeal. Within one month of the state court's denial of his request for leave to file an out-of-time appeal, Phillips filed a federal habeas petition. On appeal, the Court of Appeals concluded that the delayed notice alleged by Phillips could qualify for equitable tolling. 216 F.3d at 511. Accordingly, given its determination that Phillips pursued his claims with "diligence and alacrity," the Court remanded the matter to the District Court for an evidentiary hearing to determine the date Phillips actually received notice of the denial. *Id.* Unlike the twenty-one month period at issue in this case, the pre-notice delay experienced by Phillips amounted to less than four months, and the entire period from Phillips' filing of his state habeas petition until he actually received notice of its denial amounted to less than seven months.

We likewise find the Eleventh Circuit's decision in *Knight v. Schofield*, 292 F.3d 709 (11th Cir. 2002), distinguishable. In *Knight*, the clerk of the state supreme court inadvertently mailed notice of the disposition of Knight's *pro se* application for discretionary review to the wrong person. Knight was finally notified of the court's disposition of his application sixteen months later after he made inquiry with the clerk. Equitable tolling of the limitations period was found to be warranted given the fact that Knight was a *pro se* prisoner who failed to receive timely notice due to an inadvertent error on the part of the clerk, and who, because of the clerk's assurance of personal notification, understandably did not make an earlier inquiry. The facts here are very different. Of further importance to the court was the fact that Knight, on his own initiative and even despite the prior assurance of personal notification, contacted the clerk after a year had passed and no

15

notice was forthcoming.[6]

Finally, as we recently made clear in *Schlueter v. Varner*, *supra*, 384 F.3d 69, 74 (3d Cir. 2004), a habeas petitioner is not excused from exercising due diligence merely because he has representation during various stages of, or even throughout, his state and federal proceedings. Schlueter argued for the application of equitable tolling principles on the basis of what he characterized as attorney malfeasance. Despite the fact that counsel had informed Schlueter that he anticipated filing a PCRA petition by year's end, no such petition had been filed by the expiration of the filing deadline the following January. We nonetheless concluded that equitable tolling was not warranted because Schlueter did not attempt to ascertain from his attorney,

---

[6]The Court of Appeals was also careful to note that "not in every case will a prisoner be entitled to equitable tolling until he receives notice," and that "[e]ach case turns on its own facts." *Knight*, 292 F.3d at 711; *see also Miller v. Collins*, 305 F.3d 491, 496 (6th Cir. 2002) (*pro se* petitioner was entitled to equitable tolling where delayed notice amounted to six months and court found that petitioner "acted diligently to protect his rights both before and after receiving notice," by filing a motion with the state court when no order appeared to be forthcoming); *Jenkins v. Johnson*, 330 F.3d 1146, 1155 (9th Cir. 2003) (remanding for a determination of whether equitable tolling should be applied where state court's clerk's office mistakenly failed to send notice to counsel, the delayed notice involved only four months, and state remedies were pursued "as expeditiously as practically possible").

16

prior to the expiration of the PCRA filing deadline of which he was well aware, whether a timely petition had been filed. *Id*. at 76-77.

We add that we think LaCava's concern, expressed during oral argument, that construing the due diligence standard to require a litigant to make an occasional status inquiry would result in state courts being inundated with unnecessary mail is an unwarranted one. There is no reason such letters could not alternatively be addressed to counsel when a litigant is proceeding with representation.

## C. The District Court's Failure to Comment

We do not believe, as the Tenth Circuit Court of Appeals apparently did in *Woodward v. Williams*, 263 F.3d 1135, 1143 (10th Cir. 2001), that we are unable to engage in a meaningful review of LaCava's equitable tolling argument simply because the District Court rejected the arguments contained in his objections and traverse without comment. The District Court represented that it had considered LaCava's petition, the Magistrate Judge's Report and Recommendation, and the traverse, which reasserted the arguments contained in LaCava's objections. While it is certainly preferable that the District Court discuss the analysis it employed in considering the factors relevant to its consideration of whether equitable tolling is appropriate, the lack of such a written opinion does not mandate that we vacate the District Court's order of dismissal and remand this matter for an evidentiary hearing. Even if we were to conclude that LaCava was prevented by "extraordinary circumstances" from receiving timely notice of the state court's

17

disposition, he nonetheless failed to exercise reasonable diligence in pursuing his claims by passively waiting twenty-one months to make an inquiry into the status of his state proceeding. LaCava's initial inquiry came more than fifteen months after the Pennsylvania Supreme Court denied his petition for allowance of appeal. Thus, no evidentiary hearing on the equitable tolling issue is warranted.

## III. CONCLUSION

While we certainly avoid drawing bright lines when it comes to equitable tolling, we hold that the twenty-one months of inactivity involved here crosses the line of what constitutes due diligence for purposes of employing that principle to save an otherwise untimely filing. We thus conclude that LaCava "has not alleged facts sufficient to show that 'sound legal principles as well as the interests of justice' demand pursuit of the 'sparing' doctrine of equitable tolling." *See Robinson*, 313 F.3d at 143 (quoting *Jones*, 195 F.3d at 159). The order of the District Court dismissing LaCava's habeas petition as time-barred will be affirmed.